**In re PETTIBONE CORPORATION, et al., Debtors.**

**PETTIBONE CORPORATION, Plaintiff,**

**v.**

**Barbara J. PAYNE, Defendant.**

**Bankruptcy No. 86 B 1563–71.
Adv. No. 91 A 1210.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Jan. 21, 1993.

Richard P. Klaus, Kevin T. Keating, McDermott Will & Emery, Chicago, IL, for plaintiff.

Ronald S. Adelman, Chicago, IL, for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO FILE CLAIM

JACK B. SCHMETTERER, Bankruptcy Judge.

### Introduction

Plaintiff Pettibone Corporation and its related companies (collectively "Pettibone") successfully reorganized in Chapter 11. Plaintiff filed a two-count Adversary Complaint seeking declaratory and injunctive relief to bar Defendant Barbara J. Payne ("Payne") from pursuing her personal injury suit against Pettibone. It contends that she is barred for failure to file her claim timely. Pettibone then moved for summary judgment under Fed.R.Bankr.P. 7056. Payne responded by moving for leave to file a proof of claim, and for allowance of that claim as an administrative expense.

The uncontested facts are set forth in pleadings of the parties and in their filings under Local District Rule 12(m) and (n), which has been adopted as a Rule of this Bankruptcy Court, and in Pettibone's confirmed Chapter 11 Plan and its Disclosure Statement that preceded confirmation. For reasons set forth below, the motion of Pettibone for summary judgment is denied, and Payne is allowed to file her claim which will pend until conclusion of her tort litigation, after which it will be analyzed under principles discussed below.

*Undisputed Facts*

The dispositive facts are not in dispute:

Pettibone is a manufacturer of industrial equipment, including vehicles, and it manufactured such vehicles before, during, and after it filed and successfully pursued its Chapter 11 filings through to Plan confirmation. A number of people claiming negligence in the design and manufacture of such equipment and vehicles have sued Pettibone for injuries from their use of it, some injured before filing and some during the bankruptcy proceeding. Payne is one such claimant who was injured after the bankruptcy filing and shortly before the confirmation date.

Pettibone filed Chapter 11 petitions in this Court on behalf of itself and all of its United States subsidiaries on January 31, 1986. On August 22, 1986, this Court approved a Notice of Bar Date for Filing Proofs of Claims. On September 8, 1986, Pettibone sent that Notice to all known creditors (which did not include Payne), and published a notice in the national edition of the *Wall Street Journal* which stated, "all creditors that hold or assert any claims against Pettibone Corporation or any of its ... subsidiaries ... arising prior to the commencement of the Debtors' chapter 11 cases ... must file proofs of claim on or before October 31, 1986." The bar date for pre-petition claims was thereby fixed at October 31, 1986.

On October 26, 1988, this Court entered an order approving a Notice of Supplemental Bar Date setting December 5, 1988 for a list of creditors that became known to Pettibone after the original Notice of Bar Date. However, Pettibone was not aware of Payne's existence at this time, so Payne was not included in this list. Consequently, she was not affected by this order. Neither the original nor supplemental Notices made reference to Payne or anyone else who might be injured subsequent to the notice.

This Court entered an Order confirming Pettibone's Second Amended Consolidated Plan of Reorganization, as Modified (the "Plan") on December 9, 1988 (the "Confirmation Date"). Paragraph 8 of the Confirmation Order provided,

> Except as otherwise provided in the Plain and in such Orders as the Court has entered or may enter approving various settlement agreements in this Case, and upon completion of all actions required by the Plan to be taken on or before the Implementation Date, Pettibone shall be discharged from any debt that arose before the date of Confirmation....

Pettibone relies on this provision to argue that Payne's claim, which arose prior to confirmation, has been discharged. Paragraph 10 of the Order provided,

> Any judgment obtained at any time is void to the extent that such judgment purports to be a determination of the personal liability of Reorganized Pettibone with respect to any continuation of an action, the employment of process, or any act to collect, recover, or offset any such discharged debt as a personal liability of Reorganized Pettibone hereby is expressly enjoined.

Pettibone relies on this provision to argue that Payne is enjoined from pursuing her law suit.

During the course of the reorganization, at least eighteen parties filed personal injury suits against Pettibone based on incidents that occurred while Pettibone products were in use after the petition was filed. *Disclosure Statement* at 16. Pettibone litigated the issue of how these claimants should be treated under the Plan in *In re Pettibone (Ramirez)*, 90 B.R. 918, 932 (Bankr.N.D.Ill.1988) (hereinafter the *Ramirez* case). The result of that case was that depending on the theory under which these claimants obtained judgment, they would be entitled to recover their claims either as administrative expenses under ¶ 2.01 of the Plan or as Class 4 Creditors under ¶ 5.03. *Disclosure Statement* at 16.

Pettibone obtained insurance to cover its liability for tort claims arising out of postpetition injuries related to the use of its products. *Id.* at 14. This insurance was retroactive and had a self-insured retention of $150,000 on each claim. *Id.* Pettibone

maintains that it also has other insurance that covers the suit filed by Payne. *See "Declaration of Douglas Johnson"* at ¶ 3 ("[Payne's suit] is covered under a comprehensive general liability insurance policy issued by The Insurance Company of the State of Pennsylvania"). This coverage is subject to a self-insured retention of $300,000 per claim. *Id.* Thus, it is clear that Pettibone anticipated personal injury suits based on injuries related to the post-petition use of Pettibone products. It is not clear why the policy with the $150,000 retention is asserted not to cover the Payne injury, but clarification on that point is not necessary for purposes of this decision.

Payne alleges that on August 23, 1988 (22 months after the first claims bar date, 3½ months before confirmation), she was injured while operating a vehicle manufactured and distributed by Pettibone. On August 21, 1991, Payne filed suit against Pettibone entitled *Barbara J. Payne v. Pettibone Mercury Corporation and Pettibone Corporation* in a Michigan state court. Her suit was based on several product liability and negligence theories, and a breach of warranty claim. That case was subsequently removed to the United States District Court for the Eastern District of Michigan. Payne's complaint does not allege whether the vehicle involved in her accident was manufactured or sold by Pettibone before or after the bankruptcy petition filing date.

In response to Payne's suit, Pettibone filed this two-count Adversary Complaint seeking (in Count I) a declaratory judgment that Payne's claim against Pettibone was discharged pursuant to 11 U.S.C. § 1141(d)(1)(A), and (in Count II) a permanent injunction pursuant to 11 U.S.C. § 524 barring Payne from pursuing her personal injury claim against Pettibone. In her answer, Payne asserted that the Complaint fails to state a claim on which relief can be granted. She also asserted an entitlement to recover damages on her personal injury claim as either an administrative or a Class 4 claimant pursuant to the Confirmed Plan.

Payne's tort suit was timely filed within the applicable Michigan statute of limitations. She had no knowledge that Pettibone was in bankruptcy when she filed that suit. Indeed, Payne only learned of the bankruptcy proceeding when Pettibone filed this Adversary Complaint against her on November 27, 1991.

Pettibone's motion for summary judgment asserts that Payne's claim is barred because it had given adequate notice by publication to all possible claimants, and that Payne failed to file her claim prior to either the original or supplemental bar date, or at least before the Confirmation Date. Pettibone asserts that it had no knowledge of Payne's claim until she filed her tort suit in 1991, and so could not give personal notice to her of a claims bar date.

On August 14, 1992, this Court entered a Preliminary Memorandum Opinion directing the parties to address several issues left open in the pleadings and the summary judgment documents.[1] In response thereto, Payne filed a motion on September 23, 1992 for leave to file a late proof of claim, and for allowance of that claim as an administrative expense.

## DISCUSSION

### *Jurisdiction*

The Court has subject matter jurisdiction over Pettibone's Adversary proceeding and Payne's motion pursuant to 28 U.S.C. § 1334(b), and these matters are before the Court pursuant to 28 U.S.C. § 157 and Local District Rule 2.33. Resolution of this case requires decisions on the effect of Bankruptcy Code §§ 1141(d) and 524, Bankruptcy Rule 3003(c)(3), and Pettibone's Plan. These matters clearly involve the adjudication of substantive Title 11 rights, and they could not exist outside of Bankruptcy. *See Diamond Mortgage Corp. of Ill. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991) (defining "core jurisdiction"). Since resolution of these matters affects the allowance of claims and the administration of the estate,

**1.** A copy of this preliminary opinion is attached hereto as Exhibit A.

they are core proceedings under 28 U.S.C. § 157(b)(2)(A) and (B).

### Summary Judgment Standards

Fed.R.Civ.P. 56 (Fed.R.Bankr.P. 7056) provides that a motion for summary judgment should be granted only if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of showing that there is no genuine issue of material fact by identifying the portions of the pleadings, depositions, affidavits and other material relied on in its motion. *Id.* at 323, 106 S.Ct. at 2552. In determining whether the movant met this burden, the record is viewed in a light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the movant makes a *prima facie* case that it is entitled to summary judgment, the party opposing the motion may not rest on the allegations or denials in the pleadings, but must demonstrate that there is a genuine issue of fact for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. The existence of an issue of material fact is sufficient to deny the motion only if the disputed fact determines the outcome of the case under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

### I. Pettibone's Motion for Summary Judgment on Count I (declaratory relief)

Pettibone argues that the Confirmation Order discharged all pre-confirmation debt pursuant to 11 U.S.C. § 1141(d)(1). Since Payne's claim arose pre-confirmation, Pettibone contends that it is discharged and she is enjoined from pursuing her claim by injunctive effect of the Confirmation Order. Payne responds that "the constitutional protection of due process of law safeguards Payne's claim so that it is not barred and may be pursued because Pettibone failed to give Payne any notice of the [original or] supplemental bar date." Payne's *Response to Plaintiff's Motion* at p. 5.

A confirmation order cannot act to discharge and enjoin a claim unless the claimant has received adequate notice of the bankruptcy and any claims bar date set therein. *See In re Longardner & Associates, Inc.,* 855 F.2d 455, 465 (7th Cir.1988), *citing Mullane v. Central Hanover Bank,* 339 U.S. 306, 313–14, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950), and *New York v. N.Y., N.H., & H. Ry. Co.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953) ("the fifth amendment requires that a party must be provided with notice of the pendency of an action and an opportunity to be heard before being deprived of a protected property interest"). Moreover, a claimant who has not been given notice of the confirmation hearing cannot be deprived of rights through that hearing. *Cf. Reliable Electric Co., Inc. v. Olson Construction Company,* 726 F.2d 620, 623 (10th Cir. 1984) ("notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment of the ... Constitution").

The original published notice merely stated that creditors with *pre*-petition claims must file proofs of claim by the October 31, 1986 bar date, yet it appears that Payne might have a *post*-petition claim. *See* Discussion at Part IV. Also, the supplemental notice only set a supplemental bar date for the creditors listed in the October 26, 1988 order. Further, there is no contention by Pettibone that Payne was sent any notice of the confirmation hearing. Therefore, Payne's claim cannot have been discharged by the Confirmation Order because she never received *any* notice to make her aware of Pettibone's bankruptcy or any bar dates set therein, or the confirmation hearing.

Pettibone argues that publication notice of the 1986 bar date was sufficient to put Payne on notice of its bankruptcy. It cites *Tulsa Professional Collection Services v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed.2d 565 (1988) for the proposition that unascertainable creditors

like Payne are entitled only to publication notice. This argument misses the point because, by their terms, neither the original nor supplemental notice applied to Payne because she may have a post-petition claim. Whether publication notice is sufficient to put an unknown pre-petition creditor on notice of the bankruptcy case is not relevant here. In *Tulsa*, the executrix of a probate estate published notice of a deadline for filing creditor claims against the estate. One creditor, the hospital in which the decedent died, failed to file a claim before that deadline and was consequently barred by the probate court from pursuing its claim against the estate. The hospital appealed, arguing that its due process rights were violated because it never received actual notice of the deadline. The Supreme Court held in *Tulsa* that, because the deadline was activated by legal actions of the debtor-decedent's estate, creditors had a due process right to "notice by mail or other means as certain to ensure actual notice" of the deadline. *Id.* at 491, 108 S.Ct. at 1348. In dicta, the Court noted that, "[f]or creditors who are not 'reasonably ascertainable,' publication notice can suffice. Nor is everyone who may conceivably have a claim properly considered a creditor entitled to actual notice." *Id.* at 490, 108 S.Ct. at 1347. However, this quote does not support Pettibone's position because the Court was discussing claims that existed as of the date that notice was sent out. The Court never discussed the rights to notice of creditors whose claims might arise after notice is sent out or published.

Pettibone's argument also misses the point because, by their terms, neither the original nor supplemental notice applied to Payne. Pettibone could have moved to set a second supplemental bar date for all claims ·arising out of injuries occurring post-petition but pre-confirmation. It is reasonable to expect debtors such as Pettibone to ask the Court to set such a supplemental bar date on the eve of confirmation when they have knowledge of the potential for such claims. Had that been done, consideration could be given as to whether publication notice of such a bar date was

sufficient if the whereabouts and identity of affected claimants was not reasonably ascertainable. However, Pettibone never made such a motion. Therefore, whether publication notice can sometimes be sufficient to put an unknown creditor on notice of the bankruptcy case is not a relevant question here. Pettibone's publication notice did not pertain to Payne's future accident.

Pettibone further cites *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 112 B.R. 920 (N.D.Ill.1990), and *GreatAmerican Federal S & L v. Adcock Excavating, Inc.*, 1990 WL 51219 (N.D.Ill.1990), for support.

In *Chicago, Milwaukee*, two post-petition claimants filed a suit against the debtor about two years after the applicable claims bar date for an injury that occurred about nine months before that bar date. Two years after filing that suit, the claimants there asked leave to file late claims in bankruptcy court. The court denied their request, holding that there was no excuse for their late filing and that claimants were bound by the publication notice of the bar date. 112 B.R. at 924.

In *GreatAmerican Federal*, the claimant filed a third-party complaint against the debtor seeking indemnification for any damages arising out of its liability in an action seeking damages for defective work done by the debtor. The suit against the claimant was filed over two years after the debtor's plan was confirmed. The court granted the debtor's motion to dismiss the third-party complaint, finding that the claimant's claim was discharged without violation of its due process rights. However, the main basis for this ruling was that the claim was futile because, even if claimant had received notice, its claim would have been disallowed by virtue of 11 U.S.C. § 502(e)(1)(B).

These two cases are clearly distinguishable. Unlike *Chicago, Milwaukee*, there was no publication here that could have put Payne on notice of a claims bar date for her possible post-petition claim. Furthermore, there was no dispute in that case that the claimants there were of the sort

bound by terms of the published bar date. Unlike *GreatAmerican Federal,* there is no indication here that Payne's claim is blocked by law.

■ Pettibone argues that the publication notice to unknown creditors almost two years before Payne was injured comprised adequate notice to Payne, and that Payne's suit should be barred since she failed to file a timely claim. Its argument implies that, once Payne was hurt, she should have immediately ascertained whether any parties that might be liable were in bankruptcy and, if so, race to the court file to see if a claim should be filed before any Plan was confirmed. It has not been shown that the Bankruptcy Code requires or warrants imposition of such a far-fetched burden. If that is not Pettibone's argument, then the argument implies that *uninjured* persons who wish to protect themselves in event of future injuries have the burden of monitoring national financial papers (such as those in which Pettibone published) to read notices about businesses they have no claims against because they are on notice of claim bar dates affecting any future injuries caused by such companies. Franz Kafka would have been able to accept such a legal principle in one of his stories; the Bankruptcy Code and the Fifth Amendment to the United States Constitution cannot.

■ An elemental component of due process is the right to receive reasonable notice. As the Seventh Circuit has repeatedly observed,

> It is universally agreed that adequate notice lies at the heart of due process. Unless a person is adequately informed of the reasons for denial of a legal interest, a hearing serves no purpose—and resembles more a scene from Kafka than a constitutional process.

*Chicago Cable Communications v. Chicago Cable Commission,* 879 F.2d 1540, 1546 (7th Cir.1989), *quoting Cosby v. Ward,* 843 F.2d 967, 982 (7th Cir.1988). *See also Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 85, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988), *quoting Armstrong v. Manzo,* 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62 (1965) ("Failure to give notice violates 'the rudimentary demands of due process of law'"). Thus, it is well established that a "creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." *New York v. New York, New Haven & Hartford R.R.,* 344 U.S. 293, 297, 73 S.Ct. 299, 301, 97 L.Ed. 333 (1953); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *In re Robintech, Inc.,* 863 F.2d 393, 396 (5th Cir.1989), *cert. denied sub nom., Bullock v. Oppenheim, Appel, Dixon & Co.,* 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989).

■ "Reasonable notice" is defined by the Supreme Court as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. *See also Peralta v. Heights Medical Center,* 485 U.S. at 85, 108 S.Ct. at 899, and *Greene v. Lindsey,* 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982) (citing this passage as the accepted standard for the adequacy of notice). *Cf. Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976) (the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner). This Court must look at the totality of the circumstances in determining whether notice was reasonable. *People ex rel. Hartigan v. Peters,* 871 F.2d 1336, 1340 (7th Cir.1989). One circumstance to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor. *Id.* Another circumstance to consider is whether notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights. *Memphis Light, Gas and Water Div. v. Craft,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978); *Armstrong v. Manzo,* 380 U.S. at 551–52, 85 S.Ct. at 1191; *Aacen v. San Juan County Sheriff's Dept.,* 944 F.2d 691, 696–97 (10th Cir.1991); *Chicago Cable Commu-*

*nications,* 879 F.2d at 1545 ("Adequate notice both apprises the individual of the hearing and permits adequate preparation to present objections").

An examination of the totality of the circumstances in this case leads to the inevitable conclusion that Payne did not receive reasonable notice of either bar date or of the confirmation process. The Court reaches this conclusion even assuming the truth of Pettibone's undisputed contention that it was unaware of Payne's claim until she filed her suit in state court. The notice which Pettibone claims to have bound Payne did not allow her any opportunity to protect her rights before confirmation, let alone a meaningful opportunity.

## II. Plaintiff's Motion for Summary Judgment on Count II (Injunctive Relief)

■ The injunction issued in ¶ 10 of the Confirmation Order only applies to attempts to recover from Pettibone outside of the Plan. As discussed in Parts IV and V, Payne appears entitled to recover under the Plan. Thus, the injunction in ¶ 10 does not apply to bar Payne's suit.

The Seventh Circuit, moreover, has discussed the injunction imposed by 11 U.S.C. § 524, stating, "under section 524 as amended, discharge enjoins creditors from seeking to establish that the discharged debtor is personally liable for any pre-petition claim." *In re Hunter,* 970 F.2d 299 (7th Cir.1992). *See also* 3 *Collier on Bankruptcy,* ¶ 524.01 (15th Ed.1992) ("section 524(a) declares that any judgment rendered on a *discharged* debt ... is null and void as it affects the personal liability of the debtor") (emphasis added). Since § 524 acts as an injunction to enforce the debtor's discharge, it would seem to have no application where the pursuit of an action would not affect that discharge. In light of the earlier discussion, Payne cannot be enjoined under 11 U.S.C. § 524 from pursuing her suit since her apparent post-petition claim has not been discharged.

The holding in *In re Fernstrom Storage and Van Company,* 938 F.2d 731 (7th Cir. 1991), is also important here. In *Fernstrom Storage,* a claimant moved for relief from the automatic stay in order to allow it to pursue an action against the debtor which arose out of a pre-petition event. The court modified the stay to permit the claimant to recover against the debtor's insurers. The Seventh Circuit held *inter alia* that filing a proof of claim was not a prerequisite to the claimant's pursuit of its lawsuit since the claimant could only recover damages from the debtor's insurers, and the debtor would only be a nominal defendant in such a suit. That holding is partly distinguishable from the case at hand. The Pettibone companies do have insurance to cover the Payne claim, but that asset is burdened by a self-insured retention of $300,000 (or perhaps $150,000) on this claim, giving Pettibone a true monetary interest here.

Payne argues she would be willing to limit recovery only against the insurance company. However, Payne has not shown how Pettibone could avoid being required by the insurer to pay the self-insured retention. Accordingly, it appears that this is not a controversy solely between the insurer and the claimant; Pettibone, with its self-insured retention, is an integral part of this dispute.

Nevertheless, the reasoning of *Fernstrom* applies here. In affirming the modification of the stay, the Seventh Circuit opinion balanced the harm to debtor of allowing the suit to go forward against the harm to the claimant of enjoining the suit. *Id.* at 735–37. The harm suffered by Pettibone in allowing this suit to go on is a potential liability that it knew was likely and that it guarded against by the purchase of insurance. The self-insured retention to which it is exposed is a burden commonly accepted by substantial businesses such as Pettibone. The harm that would be suffered by Payne from the requested injunction would be to wipe out her claim because of bankruptcy proceedings which she could not possibly have known about or taken any action to protect herself against. Indeed, if Pettibone were right, the law would effectively insulate reorganized debtors against most claims that

arise post-petition, but pre-confirmation. But that is not what § 524 does.

The teaching of *Fernstrom* does mean that § 524 does not apply to bar Payne's tort suit.

### III. Motion to File a Late Proof of Claim

■ As shown, Pettibone has not demonstrated that Payne's post-petition claim is covered by any order or notice for claims bar date. Under the circumstances here, however, Payne may file a late proof of claim even if her claim were covered by the October 1986 bar date.

Bankruptcy Rule 3003(c)(3) authorizes the bankruptcy court to extend a bar date "for cause shown." In evaluating whether a late claim should be permitted under Rule 3003(c)(3), courts have considered the following factors: (i) the reason for the delay; (ii) the length of the delay; (iii) whether the debtor was prejudiced by the delay; (iv) the debtor's knowledge of the claim; and (v) the good faith of the creditor. *In re Pettibone Corp.*, 123 B.R. 304, 308 (Bankr. N.D.Ill.1990); *In re Jartran, Inc.*, 76 B.R. 123, 126 (Bankr.N.D.Ill.1987). Considering such factors in light of the undisputed facts presented clearly leads to the conclusion that Payne should be permitted to file her claim now.

The reason Payne seeks to file her claim late is that she did not even know Pettibone was in bankruptcy until she was served with Pettibone's Adversary Complaint. Pettibone gave publication notice of the first claim bar date almost two years before Payne was injured. No notice was ever sent to Payne before she filed her injury action. Payne was injured about three and one-half months before the Plan was confirmed. It cannot be expected that Payne or her counsel should have immediately investigated the economic status of Pettibone while recovering from her injuries, having received no notice or knowledge concerning the bankruptcy filing. Pettibone contends that the late date of Payne's injury—an event entirely out of her control—does not constitute a sufficient reason for allowing her to pursue her claim. That argument calls for an irrational conclusion and a grossly unjust result, a result inappropriate under the law.

The length of Payne's delay in filing her injury suit is certainly understandable under the circumstances. She filed her tort suit within Michigan's statute of limitations, the only deadline of which she had knowledge. Pettibone argues that the delay was unreasonable since many months passed between the time Payne learned Pettibone was in bankruptcy and when she requested leave to file her proof of claim. During that period, her injury counsel had to obtain bankruptcy counsel. The new counsel, in turn, had to study not merely the record of a very complex bankruptcy proceeding, but also had to understand the extremely complex and very bulky Confirmed Plan and amendments thereto, as well as the approved Disclosure Statement that explains the intent behind the Plan.

Pettibone argues that Payne's claim was not known until she filed suit over two years after the confirmation date, and that this delay prejudiced the debtors. However, as earlier discussed, Pettibone knew throughout the reorganization process that it had several claims of this type outstanding and that more were likely to follow. Claims for post-petition injuries could certainly be expected since Pettibone's industrial products continued at all times to be sold to and used by customers. Thus, while Pettibone did not specifically know of Payne's claim, it knew that her type of claim was possible, and that some claims of that nature were going to be made. It can hardly claim prejudice from events that ripened such expectations into reality. A company that manufactures products that sometimes are asserted to mangle the users should not be surprised to have such claims arise.

■ Pettibone further argues that allowing this late claim will not enable its companies to have a "fresh start". It is ironic that the feisty reorganized Pettibone, defended as it is by insurance for the bulk of claims against it, claims a threat to its business "fresh start". More to the point, the "fresh start" concept does not apply to corporate debtors. *In re Prudential*

*Lines, Inc.,* 928 F.2d 565 (2nd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991) (and cases cited therein).

Payne showed no bad faith or purposeful delay. She had a good reason for her delay, the length of that delay was reasonable, and Pettibone was not prejudiced by delay. Thus, the equities and consideration of relevant factors to consider in this situation are not difficult to balance; they clearly favor Payne.

Both sides cite *In re Unroe,* 937 F.2d 346 (7th Cir.1991), for support. In *Unroe,* the IRS sought to file a claim for taxes allegedly due for the 1983 tax year after the claims bar date had passed. It characterized this claim as an amendment to its timely filed claim for taxes due for the 1982 tax year. The Seventh Circuit held that, while the amendment did not share the necessary factual nexus to timely filed claim to "relate back" to that claim pursuant to Fed.R.Civ.P. 15(c), there were equitable grounds to allow such a late filed claim. *Id.* at 349–51. Pettibone cites *Unroe* for the statement that late claims should generally be barred. *Id.* at 351. In response, Payne refers to that opinion's extensive discussion of a bankruptcy court's power to do equity. *Id.* at 349–51. The facts in *Unroe* are distinguishable from the case at hand. Indeed, *Unroe* is specific to late filed amendments to tax claims in Chapter 13 cases. However, the dicta concerning equitable considerations carries weight in the circumstances presented here.

IV. Payne's Place in the Plan

■ If Payne is permitted to proceed with her personal injury suit, then she might recover under the Plan either as an administrative claimant, or as a Class 4 creditor.

Payne first argues that she holds an administrative claim under reasoning of the *Ramirez* case, *In re Pettibone (Ramirez),* 90 B.R. 918 (Bankr.N.D.Ill.1988). Her claim might be treated as post-petition, even if it is established that the vehicle that allegedly injured her was manufactured

pre-petition (a *"Ramirez"*-type claim). Further, Payne cites *Matter of Jartran, Inc.,* 732 F.2d 584, 587 (7th Cir.1984) for the proposition that Pettibone's post-petition failure to warn will satisfy the *"Jartran"* test resulting in Payne being accorded administrative priority.

In the *Ramirez* case, the claimant Mr. Ramirez suffered injuries from an allegedly defective forklift manufactured by Pettibone. The forklift was manufactured and sold pre-petition, but the injury occurred post-petition—while Mr. Ramirez was using the forklift in February 1986. One issue in that litigation was whether his claim arose pre or post-petition. This court reasoned that,

> if a tort claimant whose employer had purchased a defective product pre-petition is exposed only post-petition to that product and sustains bodily injury only after filing of the manufacturer's bankruptcy, the claimant's bankruptcy claim arises post-petition. This is so even though the debtor wholly manufactured and sold the defective product before commencement of the bankruptcy.[2]

90 B.R. at 932. *See also* Ginsberg & Martin, *Bankruptcy: Text, Statutes, Rules,* § 10.11[f] (3rd Ed.1992) (and cases cited therein) ("any obligation incurred by a debtor in possession or trustee while operating a business ..., including obligations resulting from negligent or tortious conduct, should qualify as an expense of administration").

Applying this reasoning to Payne would appear to make her injury a post-petition claim. Even assuming *arguendo* that Payne's employer purchased the allegedly defective product pre-petition, nonetheless the employee Payne was assertedly exposed to the asserted negligence post-petition, and sustained her alleged injury after Pettibone's bankruptcy filing. Therefore, Payne could well hold a post-petition claim.

■ However, just because Payne could have a post-petition claim does not auto-

---

**2.** Pettibone appealed the *Ramirez* decision to the District Court, but this appeal was dismissed by agreed order entered on February 9, 1989.

matically entitle her to administrative priority under § 503. Administrative priority is only available when the debtor-in-possession's actions give rise to liability. *Ramirez*, 90 B.R. at 933, *citing Cramer v. Mammoth Mart, Inc.*, 536 F.2d 950, 955 (1st Cir.1976).

The Seventh Circuit recognized a two-prong test in *Jartran* for determining administrative priority. Payne may be able to satisfy the first prong of the *Jartran* test, that a debt arose from a transaction with the debtor-in-possession. If the debtor-in-possession owed but failed to give warnings to users of its products postpetition, the debtor-in-possession's failure to fulfill that duty would be sufficient "transaction" with Payne under the *Jartran* test because its duty and omission impacted on her during the bankruptcy reorganization. *Ramirez*, 90 B.R. at 933.

Payne might also satisfy the second prong of the *Jartran* test, that Payne's transaction benefitted the debtor-in-possession in the operation of its post-petition businesses. The debtor-in-possession could be said to benefit by the continued confidence in its products by post-petition purchasers and users of its products. That confidence carries with it a business expectation that the products are reasonably safe and that known dangers will be disclosed. So long as the debtor-in-possession continues in operation and sales, it benefits from such business confidence and the resulting goodwill of its customers. *Id.* at 933–34. If there was a duty to warn Payne, the omission to do so was also a breach of that confidence of current customers and product users which kept the debtor alive and growing in Chapter 11. Payne must therefore be allowed to proceed with her tort suit in an attempt to prove a post-petition failure to warn, which her tort complaint appears to allege.

Accordingly, if Payne's tort suit succeeds on the ground that the post-petition debtor Pettibone failed to warn her, then she could satisfy the both prongs of the *Jartran* test. Consequently, Payne could be accorded administrative priority as a *Ramirez*-type claimant and recover according to ¶ 2.01 of the Plan.

## V. Possible Class 4 Claims

If Payne is not found to be an administrative claimant, then she may be treated as having a Class 4 claim. Pettibone treats *Ramirez*-type claims in its Plan as Class 4 claims. *Disclosure Statement* at pp. 15–16. Under ¶ 5.03(c) of the Plan, Class 4 claims covered by Debtor's insurance will be permitted to recover to the extent permitted under non-bankruptcy law, and any amount not covered by insurance will be a Class 4 claim. Pettibone has insurance applicable to this claim, but it is self-insured ("self-insured retention") assertedly for the first $300,000 of any defense expenses and potential judgment. Thus, the first $300,-000 of defense costs and any judgment recovered by Payne may be entitled to treatment as a Class 4 claim. Class 4 claimants are not paid by Pettibone, but may recover from the "stock pool" established by the Plan.

## CONCLUSION

While Payne may recover under the Plan, it cannot presently be decided wherein her claim fits until completion of her tort action. If the fact finder in the tort action finds that post-petition Pettibone failed in a duty to warn Payne, this Court could classify Payne as a *Ramirez*-type claimant and she could be entitled to administrative priority. Even if Payne's injuries are found to be caused by pre-petition Pettibone, Payne could still be classified as a Class 4 Claimant and treated accordingly. In any event, Payne can recover from the insurer in excess of the self-insured retention. Since Payne has the right to proceed with litigation of the tort action, final classification of Payne's claim cannot be made until final judgment is entered in that suit.

There are no genuine fact issues as to Pettibone's Adversary Complaint, but Pettibone is not entitled to judgment as a matter of law. Therefore, the Court will allow Payne to file her claim and pursue her tort suit. Pettibone's motion will be denied and the Adversary case allowed to pend until

adjudication of the injury action provides a basis for final determination.

Payne has a potential non-discharged claim, and this Court will not interfere in her liquidation of that claim in her non-bankruptcy litigation. She has full right to proceed with that litigation. Of course, Payne may not win her tort suit, and therefore may not be entitled to any recovery from Pettibone or its insurers. If she wins, the basis for her victory may determine how her claim is classified under the Plan. Accordingly, this Court must reserve judgment on classifying Payne's claim.

By order entered separately this day, Payne's motion for leave to file her proof of claim is granted, and Pettibone's motion for summary judgment is denied as to both counts of its Adversary Complaint. Payne is permitted to pursue her tort suit, and the claim and Adversary case will be held in abeyance until the injury action is concluded. These orders now entered are, of course, interlocutory.

## EXHIBIT A

### COURT'S PRELIMINARY MEMORANDUM AS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Upon review of the papers filed by both sides, the following questions do not appear to have been addressed by the parties:

A. Defendant asks leave in her Answer to Complaint to file proof of claim, and argues in opposition to the Motion for Summary Judgment that she has an administrative claim that she seeks to assert. However, she has not, to the knowledge of the Court, ever filed that or any claim. Indeed, no motion for leave to file such administrative claim, or for approval of any such claim, has been filed, either in this case or in the related bankruptcy case, which is the usual forum for such motions.

While defendant's counsel impliedly seeks to have this Court treat her prayer for relief in the Answer as an administrative claim, this Court will not entertain such request until and unless formal motion is presented on notice, supported by reference to the confirmed Plan, and citing applicable authority, both procedural and substantive. At that time, defendant shall specify whether she is seeking leave to file a late claim or leave to file a timely claim, and meet whatever burdens apply to her request. When and if that is done, plaintiff will be required to respond thereto.

B. Plaintiff's motion rests on the basic contention that ¶ 8 of the Order of Confirmation discharged the defendant's claim that is the subject of this Adversary case, and ¶ 10 thereof barred any action to collect the discharged debt. Paragraph 8 of the decretal portion of that Order provided in pertinent part that, *"Except as otherwise provided in the Plan* ... Pettibone shall be discharged from any debt that arose before the date of Confirmation...."
(Emphasis added.)

Paragraph 10 thereof provided in pertinent part that

... the commencement or continuation of an action, the employment of procedures, or any act to collect, recover, or offset any such discharged debt *as a personal liability of Reorganized Pettibone* hereby is expressly enjoined.

(Emphasis added.)

Plaintiff has thereby tacitly invited this Court to take judicial notice of the Disclosure Statement which described the Plan, as well as the Plan itself submitted as an exhibit supporting the pending motion. The parties have not discussed the wording of these provisions, nor the wording of the confirmed Plan itself.

In view of the defendant's indicated offer to pursue only insurance assets and assets available to Class 4 creditors, does she seek to collect "as a personal liability of Reorganized Pettibone" (Order ¶ 10)? Plaintiff says that she does because of the $300,000 insurance retention. However, plaintiff has not articulated or demonstrated how defendant's suit will reach $300,000 or any part of the assets of Reorganized Pettibone, nor has it demonstrated how the liquidation of other injury claims for the same insurance policy year will impact on the retention question, even before considering this defendant's claim. Finally, plaintiff does not say whether it contends that Class

4 creditors will receive any assets of reorganized debtor.

Apart from the foregoing questions and ¶ 10 of the confirmation order, there also remain questions under ¶ 8 of that Order which have not been discussed. Pettibone was discharged from preconfirmation debt "except as otherwise provided in the Plan."

The confirmed Plan provided for payment of allowed administrative expenses in the ordinary course of business in accord with normal credit terms as to trade payables "or as ordered by the Bankruptcy Court." Plan ¶ 2.01. Does defendant have an administrative claim? If so, is it protected by ¶ 2.01?

In Plan ¶ 5.03(c), treatment of Class 4 creditors is provided to include the following:

(c) Class 4 Claims which are covered by insurance purchased by a Debtor after commencement of the Case shall be entitled to the benefits and proceeds of such insurance to the extent available under non-bankruptcy law. Any portion of such a Claim which is not paid from the proceeds of such insurance coverage (whether as a result of a deductible or self-insured retention or otherwise) shall be a Class 4 Claim for purposes of the Plan.

While Class 4 is not defined in the Plan except as "Unsecured Claims" (¶ 3.04), the approved Disclosure Statement detailed what the debtor understood to be claims included in that class, namely, "including, without limitation ... (c) claims arising out of the manufacture or sale of product prior to the Petition Date by a Debtor ..." (but not including certain defined claims). (Disclosure Statement at ¶ 8). Is defendant a Class 4 creditor protected by Plan ¶ 5.03(c)?

Moreover, at pages 15–16, the Disclosure Statement discusses this Court's opinion in *Pettibone v. Ramirez*, No. 87 A 243. On page 16, it is stated, as to "Ramirez-type lawsuits and/or Claims pending against Pettibone", that "such plaintiffs and claimants are treated as Class 4 creditors." Although defendant's suit was not then "pending against Petitioner," if defendant

has a "Ramirez-type lawsuit", is she a Class 4 creditor?

In light of the "Ramirez-type" discussion, what is to be made of the description of Class 4 on page 42 of the Disclosure Statement as including "all pre-petition unsecured claims that are not otherwise included in other classes described herein...."?

While the Court could draw its own conclusions from the documents, it is appropriate to allow the parties an opportunity to brief these questions. Also, the Court has not made exhaustive study of the Plan and Disclosure Statement, and is entitled to ask the parties to do so.

By separate Order, a schedule is set for supplemental briefs.

ENTER:

/s/ Jack B. Schmetterer

Jack B. Schmetterer
United States Bankruptcy Judge

Dated and Entered this 14th day of August 1992.