**In re ATLANTIC WASTE SYSTEMS NORTH, INC., Debtor.**

**Bankruptcy No. 94–11354–MWV.**

United States Bankruptcy Court,
D. New Hampshire.

July 24, 1996.

Edmund P. Hurley, Greenberg, McGlone & Hurley, P.C., Boston, MA, George J. Nader, Zimble & Brettler, Boston, MA, for Debtor.

Christopher A. Bandazian, Borofsky, Lewis & Amodeo–Vickery PA, Manchester, NH, for Creditor Daniel Feudner.

Geraldine Karonis, Asst. U.S. Trustee, Manchester, NH.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it a Motion to Enforce Discharge Provisions under Confirmed Plan and to Assess Sanctions filed by Atlantic Waste Systems North, Inc. ("Debtor") on February 14, 1996. In its motion the Debtor requested that the Court reopen its Chapter 11 case in order to enforce the discharge provisions in the Debtor's confirmed plan of reorganization as well as the discharge injunction issued pursuant to 11 U.S.C.

§§ 1141 and 524 against Daniel Feudner, a former employee of the Debtor. The Court held a hearing on the motion on February 27, 1996, at which the Court declined to reopen the case and instead opted to exercise its retained jurisdiction pursuant to paragraph 8 of the Court's confirmation order. The Court continued the hearing to March 11, 1996, in order to take evidence and hear argument on the legal issues presented by the motion. The continued hearing was held on March 11, 1996, at which Cheryl Coletti, President of the Debtor, Robert Van Laarhoven, an employee of the Debtor, and Daniel Feudner testified. At the conclusion of the hearing the Court took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

This matter is before the Court *solely* because of the 1994 inclusion of R.S.A. § 281–A:25–a in the workers' compensation statute which the Department of Labor has interpreted to allow the department to assess retroactive weekly wage benefits directly against the employer as opposed to its worker's compensation insurance carrier. *See* New Hampshire Rev.Stat.Ann. § 281–A:2, VII (defining the term "employer") and § 281–A:25(a), IV (permitting assessment of retroactive wage benefits). Until now, worker's compensation proceedings have generally proceeded without obtaining relief from the automatic stay on the theory that it is business in the usual course and that any award will be covered by insurance. The reason for the Court's opinion is to inform both employers and the Department of Labor that in the future relief from the automatic stay will be required and will be usually granted only to proceed against the debtor's insurance carrier.

## FACTS

On April 14, 1994, Daniel Feudner was hired by the Debtor to drive a trash removal truck. On May 6, 1994, he was involved in an accident while at work which resulted in personal injury. Mr. Feudner remained out on worker's compensation for several months. On June 7, 1994, the Debtor filed Chapter 11 bankruptcy. Mr. Feudner was not listed as a creditor on the original schedules.

Mr. Feudner returned to work on September 15, 1994. On October 4, 1994, the Debtor amended its list of creditors and filed its first plan of reorganization. Mr. Feudner was not included in the amended list. On October 14, 1994, an argument erupted at the Debtor's office between Mr. Feudner and Mr. Fred Lecesse, an officer of the Debtor. During the argument, Mr. Feudner walked away and left the premises. Ms. Coletti testified that she thought Mr. Feudner had quit.

On November 28, 1994, Mr. Feudner filed a reinstatement claim against the Debtor with New Hampshire's Department of Labor. On December 2, 1994, the Debtor filed an amended plan. On December 22, 1994, the Court approved the disclosure statement and set January 30, 1995, as the date for confirmation. The Department of Labor issued a notice of hearing on December 28, 1994, regarding Mr. Feudner's reinstatement claim. The notice was sent to the Debtor's worker's compensation carrier, Liberty Mutual Insurance, but not to the Debtor. (See Ex. 1.) It was not until January 4, 1995, that the Debtor learned of the January 18, 1995, hearing by way of a fax from the attorney for its insurance carrier.

Also on December 28, 1994, the disclosure statement, plan and notice regarding voting were mailed by the Debtor to the creditors on its list of creditors. As indicated above, Mr. Feudner was not on the list, and he testified that he received no notice of the Debtor's bankruptcy or its confirmation hearing until January 18, 1995, twelve days before the confirmation hearing. According to Mr. Laarhoven, he told Mr. Feudner in September of 1994 that the Debtor was in bankruptcy when he explained the meaning of "debtor in possession," a term that appeared on the Debtor's new payroll checks. (See Ex. 4.) Mr. Feudner denied this con-

versation took place. Nevertheless, the Debtor did not send formal notice to Mr. Feudner regarding the bankruptcy or confirmation hearing even upon learning on January 4, 1995, that Mr. Feudner had filed a claim with the state.

On January 18, 1995, Ms. Coletti and Mr. Feudner attended the Department of Labor hearing at which Ms. Coletti mentioned in the course of her testimony that the Debtor's confirmation hearing would be held at the Bankruptcy Court on January 30, 1995. The Debtor's Second Amended Plan was confirmed by the Court on February 7, 1995, and on February 22, 1995, Mr. Feudner's request for reinstatement was denied. On or about March 22, 1995, Mr. Feudner filed an appeal of the Department of Labor's decision with the Workers' Compensation Appeals Board.

The Bankruptcy Court entered a final decree, which closed the Debtor's Chapter 11 case, on June 20, 1995, and on June 21, 1995, the Debtor received a letter from the attorney for its worker's compensation carrier regarding Mr. Feudner's appeal. This letter was the first notice the Debtor received regarding the appeal, and, according to Ms. Coletti, it was the first notice given to the Debtor that Mr. Feudner was seeking reinstatement *or* worker's compensation.

On October 13, 1995, the Appeals Board issued a decision reversing the decision of the Department of Labor and finding that the Debtor failed to accommodate Mr. Feudner's medical and doctor appointments relating to his work injury. Instead of ordering reinstatement, however, the Appeals Board ordered that the Debtor, not its insurance carrier, be responsible for money damages consisting of $5,791.73 in back wages plus $4,117.52 in attorney's fees. The Debtor's request for reconsideration of this decision was denied on December 22, 1995.[1]

The Debtor filed its motion for sanctions in the Bankruptcy Court on February 14, 1996, almost two months after the motion for rehearing was denied by the Worker's Compensation Appeals Board and shortly before the second distribution under the Debtor's Chapter 11 plan.

## DISCUSSION

In its motion the Debtor requests that the Court: (1) declare that Mr. Feudner's preconfirmation claim has been discharged under the Debtor's confirmed plan and is no longer a valid claim against the Debtor's estate; (2) enjoin Mr. Feudner from taking any further action against the Debtor to enforce his preconfirmation claim against the Debtor; and (3) sanction Mr. Feudner for failing to voluntarily cease his actions against the Debtor. The Debtor relies on two Bankruptcy Code sections in seeking the relief requested. 11 U.S.C. § 1141(d)(1) provides:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan

   (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h) or 502(i) of this title, whether or not—

   (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

   (ii) such claim is allowed under section 502 of this title; or

   (iii) the holder of such claim has accepted the plan. . . .

11 U.S.C. § 524(a) provides:

A discharge in a case under this title—

   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section . . . 1141 . . . of this title, whether or not discharge of such debt is waived;

   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability

---

1. The motion for rehearing did not contest the Appeals Board authority to specifically assess retroactive wage benefits against the employer (Atlantic Waste) and exclude payment by its insurance carrier.

of the debtor, whether or not discharge of such debt is waived....

■ According to the Debtor, section 1141(d)(1) discharges the debt owed to Mr. Feudner because his debt arose before confirmation. It is irrelevant that Mr. Feudner did not file a proof of claim, that his claim was not allowed, and that he did not vote on the plan. The Debtor argues that because the debt owed to Mr. Feudner is discharged, he cannot bring any action or attempt to collect the debt as it would violate the discharge injunction imposed by section 542(a)(2).

Section 1141(d)(1), on its face, appears to permit a claim to be discharged regardless of whether the holder received notice of the case or of the pending confirmation of a Chapter 11 plan. *Adam Glass Serv. v. Federated Dep't Stores,* 173 B.R. 840, 842 (E.D.N.Y.1994); *In re Snug Enters. (Snug Enters. v. Sage),* 169 B.R. 31, 33 (Bankr. E.D.Va.1994). Therefore, courts construing section 1141(d)(1) have found that discharging claims under section 1141(d)(1) without notice violates constitutional due process requirements. *See Adam Glass Serv.,* 173 B.R. at 842 (citations omitted); *In re Snug Enters.,* 169 B.R. at 33; U.S. Const.Amends. V, XIV.

The evidence, as detailed above, reveals that the Mr. Feudner holds a postpetition claim against the Debtor which he did not assert in the Debtor's bankruptcy case prior to the confirmation of the Debtor's plan. Mr. Feudner testified, however, that he had no knowledge of the bankruptcy until January 18, 1995, the day of the Department of Labor hearing at which Ms. Coletti testified that the Debtor was in bankruptcy and that its confirmation hearing was scheduled for January 30, 1995. Thus, the issue before the Court is whether twelve days constitutes sufficient notice in accordance with constitutional notions of due process.

■ Due process requires:

notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Sequa Corp. v. Christopher (In re Christopher),* 28 F.3d 512, 516 (5th Cir.1994) (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). The Court must look at the totality of the circumstances in determining whether notice was reasonable. *Pettibone Corp. v. Payne (In re Pettibone Corp.),* 151 B.R. 166, 172 (Bankr.N.D.Ill.1993) (citing *People ex rel. Hartigan v. Peters,* 871 F.2d 1336, 1340 (7th Cir.1989)). Circumstances to consider in evaluating the sufficiency of notice is whether alleged inadequacies in the notice prejudiced the creditor and whether the notice was given to the creditor in time for it to take meaningful action in response to the impending deprivation of its rights. *Id.* at 172–73 (citations omitted). The focus of due process is on "the duty of the debtor to give notice of the relevant dates, not on the relative ease with which a creditor can obtain information without such notice." *Adam Glass Serv.,* 173 B.R. at 842 (citation omitted).

The evidence before the Court is that Mr. Feudner sought reinstatement in accordance with New Hampshire R.S.A. § 281–A:25–a in November of 1994. (See Exs. 1, 2, and 6.) Ms. Coletti testified that the Debtor became aware of Mr. Feudner's action on January 4, 1995, when it received a fax copy of the Department of Labor's hearing notice. She also testified that the Debtor was unaware that Mr. Feudner was seeking anything other than reinstatement. The hearing notice, however, contained a reference to "RSA 281–A:25–a," Ex. 1, and section IV of that statute provides that "[t]he commissioner may assess *employers* in violation of this section all weekly *wage benefits* retroactive to the date the injured employee was eligible for reinstatement." New Hampshire R.S.A. § 281–A:25–a, IV (effective Feb. 8, 1994) (emphasis added). This should have put the Debtor on notice of the possibility that Mr. Feudner could be awarded money damages. However, upon receiving this notice, Ms. Coletti did not give notice to the company's bankruptcy

counsel of the pending state proceeding. Rather, the Debtor waited until an adverse decision was rendered before it notified its bankruptcy counsel. The Debtor proceeded with the Department of Labor matter as if there were no bankruptcy—Atlantic Waste never raised the stay issue.

Because the language of the statute clearly states that the employer may be liable thereby putting the Debtor on notice that Mr. Feudner had an unliquidated, contingent claim, the Debtor should have provided Mr. Feudner with formal notice of the bankruptcy and confirmation hearing. The Debtor, however, failed to provide Mr. Feudner with formal notice. The Debtor argues that Mr. Feudner had constructive or actual notice and that this notice satisfies due process. In the Debtor's view, twelve days actual notice is sufficient to satisfy due process.

In *Sequa Corp. v. Christopher (In re Christopher)*, 28 F.3d 512 (5th Cir.1994), the Fifth Circuit found that due process did not preclude the discharge of a creditor's postpetition claim against a Chapter 11 debtor, even though the creditor was not listed as a creditor, the creditor did not participate in the bankruptcy proceedings, and the creditor was not notified of important dates such as the deadline for filing plan objections or the date of the confirmation hearing. The court found that because the creditor had actual notice of the debtor's bankruptcy before the claim arose, the creditor had the burden to come forward with its claim.

This Court disagrees that Mr. Feudner's actual notice was sufficient to satisfy the due process requirements of the Constitution. In *Christopher*, the creditor learned of the Debtor's bankruptcy at least sixteen months before the Debtor's plan was confirmed. Here, the creditor was informed only twelve days before confirmation. The Court finds that the notice given to Mr. Feudner was not of "such nature as reasonably to convey the required information." The notice that Mr. Feudner received was a fleeting comment in Ms. Coletti's testimony before the Department of Labor that Atlantic Waste North was in bankruptcy and that the case was set for confirmation at the end of the month. This notice was insufficient to inform Mr.

Feudner that he could file a proof of claim in this case, that he was entitled to a copy of the disclosure statement and plan, that he was entitled to vote on the plan and file objections to it, and that failure to take any of these actions would prejudice his rights. The Court also notes that unlike the creditors in *Christopher*, which were corporations involved in the insurance business, Mr. Feudner is an unsophisticated creditor, a young man in his twenties who was hired by the Debtor to drive one of its trucks.

The Court finds support for its decision in other reported cases. In *In re Leading Edge Products*, 120 B.R. 616 (Bankr.D.Mass. 1990), the court held that notwithstanding the creditor's actual knowledge of the filing of a plan of reorganization, the Chapter 11 trustee's failure to provide the creditor with formal notice of the time for filing objections and for hearings on the disclosure statement and plan of reorganization violated due process. Consequently, the court rendered the confirmed plan and all its provisions ineffective as to the creditor's claim.

While the facts of this case are different because the creditor in *Leading Edge Products* held a prepetition claim for which it filed proofs of claim prior to the bar date, the reasoning of the court is applicable to the situation before this Court. In that case, the bankruptcy court was "unconvinced that mere knowledge of the filing of a plan or reorganization shifts the burden to a creditor to inquire as to hearings on the adequacy of the disclosure statement and confirmation." *Id.* at 620. Although the court stated that its "decision might be different if [the creditor] had actual knowledge of the date of the hearing on confirmation," the Court finds that in this case the fact that Mr. Feudner knew the date for confirmation does not prevent it from holding that the confirmation order does not discharge his claim.

In *Adam Glass Serv. v. Federated Dep't Stores*, 173 B.R. 840 (E.D.N.Y.1994), the court found that a creditor's lack of notice violated the creditor's due process rights and prevented the discharge of its prepetition claim by the confirmation order. In that case the debtor failed to provide any notice, written or verbal, of pertinent filing dead-

lines even after the creditor became aware of the bankruptcy and questioned the debtor about it. In *Snug Enters. v. Sage (In re Snug Enters.)*, 169 B.R. 31 (Bankr.E.D.Va. 1994), the court held "no notice, no discharge." In that case, the creditor held a prepetition claim for wrongful death but he was not listed on the debtor's schedules nor was he given any notice of the bankruptcy.

In *Pettibone Corp. v. Payne (In re Pettibone Corp.)*, 151 B.R. 166 (Bankr.N.D.Ill. 1993), the court held that a confirmation order did not preclude a creditor's postpetition, preconfirmation claim against the debtor for personal injury when the creditor did not receive notice of the bar date for filing claims against the debtor and had no other knowledge of the bankruptcy filing. Accordingly, the court found that the discharge injunction did not preclude the creditor from recovering against the debtor.

These cases emphasize that without notice complying with notions of due process a creditor's claim will not be discharged by the confirmation of a debtor's plan. Here, the Debtor was aware that a former employee was seeking redress in state court for his termination. The Debtor was also aware that it was in bankruptcy. The Debtor was in the best position to provide notice of the relevant dates to the creditor. The Debtor failed to provide adequate notice to Mr. Feudner as a remark by management of the Debtor in the context of a worker's compensation hearing only twelve days before confirmation is insufficient notice for a creditor to take meaningful action in response to the impending deprivation of his rights.

### CONCLUSION

For all the above reasons, the Court finds that Mr. Feudner's preconfirmation claim has not been discharged by the Debtor's confirmed plan pursuant to 11 U.S.C. § 1141(d)(1). Therefore, Mr. Feudner is not enjoined by 11 U.S.C. § 524(a) from taking any further action against the Debtor to enforce his preconfirmation claim against the Debtor. The Court will not sanction Mr. Feudner for failing to voluntarily cease his actions against the Debtor.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.